UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SALINA MAYES,

                          Plaintiff,

          v.

UNITED STATES OF AMERICA,

                        Defendant.

_____

**DECISION
and
ORDER**

**19-CV-355F
(consent)**

APPEARANCES:       LoTEMPIO P.C. LAW GROUP
                              Attorneys for Plaintiff
                              BOYD L. EARL, and
                              HEATHER MARIE BAUMEISTER, of Counsel
                              181 Franklin Street
                              Buffalo, New York 14202

                              TRINI E. ROSS
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              MARY PAT FLEMING
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202

## JURISDICTION

On August 10, 2020, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.   The action is presently before the court on

Defendant's motion for summary judgment (Dkt. 46), filed February 9, 2022.

## BACKGROUND

On March 15, 2019, Plaintiff Salina Mayes ("Plaintiff" or "Mayes"), commenced

this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680,

seeking to recover money damages against the United States Postal Service ("USPS") for injuries sustained April 9, 2016, in a motor vehicle collision between Plaintiff and Lynne Mirco ("Mirco"), a USPS employee.   Prior to filing its answer, default was entered against USPS on November 19, 2019 (Dkt. 7).   On December 12, 2019, USPS moved to set aside the entry of default (Dkt. 8), and on April 22, 2020, USPS moved to substituted United States of America as Defendant (Dkt. 18).   By Decision and Order filed May 13, 2020 (Dkt. 24), the court granted USPS's motion to set aside entry of default, as well as the motion to substitute parties (Dkt. 24).   On May 26, 2020, Defendant United States of America ("Defendant") filed its answer (Doc. No. 26).   Fact discovery concluded on March 31, 2021, with expert witnesses to be identified by Plaintiff on March 30, 2021, and by Defendant on May 14, 2021.

On February 9, 2022, Defendant filed the instant motion for summary judgment (Dkt. 46) ("Defendant's Motion"), attaching the Declaration of [Assistant United States Attorney][1] Michael S. Cerrone, Esq. (Dkt. 46-1) ("Cerrone Declartion"), with exhibits 1 through 34 filed in three volumes (Dkts. 46-2 through 46-4) ("Defendant's Exh(s). __), the Declaration of John L. Leddy, M.D., Defendant's expert witness (Dkt. 46-5) ("Dr. Leddy Declaration"), the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 46-6) ("Defendant's Memorandum"), and a Statement of Undisputed Facts (Dkt. 46-7) ("Defendant's Statement of Facts").   In opposition to summary judgment, Plaintiff filed on May 2, 2022, the Attorney Declaration [of Boyd L. Earl, Esq.] (Dkt. 50) ("Earl Declaration"), attaching exhibits 1 through 18 (Dkts. 50-1 through 50-18) ("Plaintiff's Exh(s). __), the Declaration [of Jihad Abialmouna, M.D.]

2

(Dkt. 50-19) ("Dr. Abialmouna Declaration"), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. 50-20) ("Plaintiff's Response"), and Plaintiff's Opposing Statement Pursuant to Local Rule 56(a)(2) and Counterstatement of Facts (Dkt. 50-21) ("Plaintiff's Statement of Facts").   On May 20, 2022, Defendant filed in further support of summary judgment a Response to Counter-Statement of Facts (Dkt. 51) ("Defendant's Counter-Statement of Facts"), the Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 51-1) ("Defendant's Reply"), the Declaration [of John L. Leddy, M.D.] (Dkt. 51-2) ("Dr. Leddy Reply Declaration"), and exhibits 35 and 36 (Dkts. 51-3 to 51-4) ("Defendant's Exh(s). __").   Oral argument was deemed unnecessary.

　　　　Based on the following, Defendant's motion should be GRANTED in part and DENIED in part.


## **FACTS**[2]

　　　　On June 27, 2015, Plaintiff Salina Mayes ("Plaintiff" or "Mayes"), was involved in a motor vehicle accident ("the prior accident"), when she was a passenger in another vehicle which was rear-ended by another vehicle.   As a result of the prior accident, Plaintiff suffered a cervical strain, and neck, shoulder, and upper back pain for which Plaintiff received medical treatment including chiropractic treatment, attended 35 physical therapy and/or massage sessions between June 27, 2015 and April 9, 2016, and pain management treatment where Plaintiff's cervical pain levels were recorded as

---

[1]  Unless otherwise indicated, bracketed material has been added.
[2]  Taken from the pleadings and motion papers filed in this action.

between 4 and 8 on a scale of ten.   A cervical MRI conducted on March 17, 2016

showed a disc herniation at C3-4.   On April 6, 2016, Plaintiff underwent an independent

medical examination ("IME") where she complained of neck pain levels of five out of ten,

and Plaintiff showed decreased cervical range of motion.

At 10:50 A.M. on April 9, 2016, Plaintiff was driving a motor vehicle traveling

north on North Forest Road in the Town of Amherst, New York.   Upon reaching the

intersection with Maple Road, Plaintiff pulled into the left turning lane.   Because the

traffic light was red, Plaintiff came to a complete stop.   As she sat in her stopped

vehicle waiting for the traffic signal to change, Plaintiff's vehicle was stuck from behind

by a United States Postal Service ("USPS") mail truck ("the truck"), driven by USPS

employee Lynne Mirco ("Mirco").   Mirco maintains she was also stopped at the red

light, waiting in the left turning lane on North Forest Road behind Plaintiff's vehicle, and

when the light turned green, she took her foot off the brake and the truck began to roll

forward toward Plaintiff's vehicle.   When Mirco realized Plaintiff's vehicle had yet to

move, Mirco slammed on the truck's brake.   It is undisputed that the truck hit Plaintiff's

vehicle at a low rate of speed ("the accident"), and resulted in minor, if any, damage to

Plaintiff's vehicle which did not require repairs.

Following the accident, Plaintiff received medical treatment on April 12, 2016,

albeit for her neck and upper back relative to the prior accident, at Tonawanda Medical

Practice, PC ("Tonawanda Medical"), where Plaintiff's primary care physician ("PCP")

was Jihad Abialmouna, M.D. ("Dr. Abialmouna").   At that time, Plaintiff did not complain

of any lower back, leg, or foot pain and her gait was normal.   On May 4, 2016, Plaintiff

complained to Dr. Abialmouna who evaluated Plaintiff relative to the accident of

4

"difficulty walking due to spasms," Dkt. 46-3 at 113, and Dr. Abialmouna assessed

Plaintiff with, *inter alia*, "other spondylosis with myelopathy, thoracic region."   *Id*. at 115.

Although Plaintiff continued to seek medical care for her cervical and thoracic pain, it

was not until November 3, 2016 when Plaintiff, while at an examination by her primary

care physician, first complained of lower back pain radiating into her left buttock, but did

not report leg or foot pain.   On February 3, 2017, Plaintiff complained of increasing

neck and lower back pain.   In a treatment note dated April 4, 2017, Defendant's Exh.

24 (Dkt. 46-4 at 21), Dr. Abialmouna reported Plaintiff stated her neck and lower back

pain worsened after Plaintiff saw the chiropractor.

On September 29, 2017, Plaintiff fell down the stairs in her home ("the fall").

Following the fall, Plaintiff complained of left-sided buttock pain, left calf pain, and left

foot pain.   Despite a spinal surgeon concluding MRIs of Plaintiff's cervical, lumbar, and

sacral spines were essentially normal and Plaintiff would not be helped by any surgical

procedure, on November 6, 2017, Plaintiff was taken out of work by Dr. Jerry Tracy ("Dr.

Tracy"), for left leg and left foot pain and difficulty ambulating. Dr. Tracy diagnosed

Plaintiff with complex regional pain syndrome ("CRPS") relative to her left foot.   Plaintiff

has not returned to work since November 6, 2017.

On April 6, 2018, Plaintiff filed an administrative tort claim with the USPS seeking

$ 1,000,000 in damages for injuries Plaintiff allegedly sustained in the accident.

Plaintiff's alleged injuries include (1) bulging discs in the cervical spine at levels C3-4,

C4-5, and C5-6, (2) bulging discs in the lumbar spine at levels L3-4, L4-5, and L5-S1,

(3) lumbar radiculopathy at L5-S1, (4) spondylosis throughout the spine, (5) migraine

headaches, (6) complex regional pain syndrome of the lower limbs, (7) piriformis

5

syndrome (a condition in which the piriformis muscle, located in the buttock region, spasms and causes buttock pain), (8) adjustment disorder with mixed anxiety and depressed mood, (9) agoraphobia with panic disorder, and (10) post-traumatic stress disorder ("PTSD").   An MRI of Plaintiff's thoracic spine on August 17, 2018 was normal.

## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).   The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.   *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.   *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment

6

motion.  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990)

(non-movant cannot "escape summary judgment merely by vaguely asserting the

existence of some unspecified disputed material facts"); *Reisner v. General Motors

Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) (disregarding non-movant's self-serving

affirmations contradicting prior assertions in depositions, interrogatories and affidavits).

"The non-moving party may not rely on conclusory assertions or unsubstantiated

speculation [to defeat summary judgment]."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d

Cir. 1998).   Rather, "the non-movant must produce specific facts indicating that a

genuine factual issue exists."  *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998)

(underlining added).   The ultimate inquiry on a summary judgment motion is whether

any reasonable jury could find the plaintiff's evidence meets the requisite burden of

proof.  *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir.

2004).

　　　　Defendant's Motion seeking summary judgment is limited to whether Plaintiff can

establish that her injuries are serious within the meaning of New York's "No-Fault" Law,

N.Y. Ins. Law § 5102(d) ("No-Fault law" or "§ 5102(d)"), Defendant's Memorandum at

8-13, and whether the injuries were caused by the April 9, 2016 accident, or are

attributed to the prior accident on June 27, 2015, or to Plaintiff's falling down the stairs

in her home on September 29, 2017.   *Id*. at 13-14.   Defendant further maintains that

Plaintiff's claim for lost wages is barred under the No-Fault law because Plaintiff's work

disability was caused by her CRPS which was caused by her falling down the stairs in

her home, and not by the accident.   *Id*. at 14-15.   In opposition, Plaintiff argues that

Plaintiff sustained a permanent consequential limitation, or a significant limitation, of use of a body organ or member as required for New York's No-Fault insurance law, Plaintiff's Response at 9, there are issues of fact regarding whether Plaintiff's injury was proximately caused by the April 9, 2016 accident, *id*. at 9-11, as well as whether Plaintiff's work disability, for which Plaintiff seeks lost wages, is attributable to the accident.   *Id*. at 11-13.   In further support of summary judgment, Defendant reiterates that Plaintiff cannot establish either a serious injury under the No-Fault law, Defendant's Reply at 1-6, or causation, *id*. at 6-8, and that the lack of causation bars Plaintiff from recovering lost wages.   *Id*. at 8.

## 2.   Federal Tort Claims Act

According to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."   28 U.S.C. § 2674.   The parties do not dispute that Plaintiff has complied with the FTCA's requirements that prior to commencing legal action, the tort claim must be presented to the appropriate federal agency which either denied the claim or, after more than six months, failed to make a final disposition of the claim.   28 U.S.C. § 2675(a).   Complaint ¶¶ 5-7; Answer ¶¶ 5-7.   Further, pursuant to 28 U.S.C. § 1346(b), the instant FTCA action is to be decided "in accordance with the law of the place where the act or omission occurred," here, New York, *Taylor v. U.S.*, 121 F.3d 86, 89 (2d Cir. 1997) ("The liability of the federal government under the FTCA is generally determined by state law"), and the parties do not argue otherwise.

3.    **New York No-Fault Insurance Law**

Under New York's Comprehensive Automobile Insurance Reparations Act, commonly known as the "No-Fault Insurance Law," automobile owners in New York are required to carry automobile insurance compensating injured parties for "basic economic loss" caused by the use or operation of the automobile within New York, regardless of fault.    *Pommells v. Perez*, 830 N.E.2d 278, 280 (N.Y. 2005) (citing N.Y. Ins. Law §§ 5102[a], 5103).    Under the No-Fault Law, a plaintiff may not recover for basic economic losses such as unreimbursed medical expenses, lost wages, or property damage unless such losses exceed $ 50,000.    N.Y. Ins. Law § 5102(a). Further, "[o]nly in the event of 'serious injury' as defined in the statute, can a person initiate suit against the car owner or driver for damages caused by the accident." *Pommells*, 830 N.E.2d at 280 (quoting N.Y. Ins. Law § 5104[a]).    "No-Fault thus provides a compromise: prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury."    *Id.* (underlining added; citing *Montgomery v. Daniels*, 340 N.E.2d 444 (N.Y. 1975)).

"By enacting the No-Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents to the extent that plaintiffs in automobile accident cases no longer have an unfettered right to sue for injuries sustained."    *Licari v. Elliott*, 441 N.E.2d 1088, 1091 (N.Y. 1982) (citing *Montgomery v. Daniels*, 340 N.E.2d 444, 453-54 (N.Y. 1975)). In particular,

> Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of

recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.

N.Y. Ins. Law § 5104(a) ("§ 5104(a)").

"Thus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury." *Licari*, 441 N.E.2d at 1091.   As such, it "is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute," *id.*, and "[i]f it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of [§ 5102(d) ], then plaintiff has no claim to assert and there is nothing for the jury to decide." *Id.* at 1092.

### A.   "Serious Injury"

Regardless of whether Plaintiff sustained in excess of the $ 50,000 threshold in damages from medical expenses, lost wages, and other reasonable and necessary expenses to sustain a claim for basic economic expenses, to recover for non-economic losses, Plaintiff must establish she sustained a "serious injury" under New York's No-Fault Law. N.Y. Ins. Law § 5104(a) ("there shall be no right of recover for non-economic loss, except in the case of a serious injury ...").   As relevant, a "serious injury" is defined as

> A personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determinable injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less

10

than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

"There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.'" *Licari*, 441 N.E.2d at 1091 (quoting Memorandum of State Executive Dep't, 1977 McKinney's Session Laws of N.Y., p. 2448).   "While it is clear that the Legislature intended to allow plaintiffs to recover for noneconomic injuries in appropriate cases, it had also intended that the court first determine whether or not a prima facie case of serious injury has been established which would permit a plaintiff to maintain a common-law cause of action in tort."   *Id.* (citing cases).   Accordingly, in the instant case, to establish a "serious injury," Plaintiff must submit medical evidence demonstrating at least one of the nine categories of serious injury specified under § 5102(d).

Here, Plaintiff generally seeks to recover for injuries to her cervical, thoracic, lumbar, and sacrum sections of the spine, migraine headaches, CRPS of the lower limbs, piriformis syndrome, adjustment disorder with mixed anxiety and depressed mood, agoraphobia with panic disorder, and PTSD, all allegedly caused by the accident. Plaintiff specifies that her injuries meet two of § 5102(d)'s nine categories of serious injury, including (1) a significant limitation of use of a body function or system; or (2) permanent consequential limitation of use of a body organ or member. Plaintiff's Response at 8-11.

To obtain summary judgment on Plaintiff's serious injury claim under § 5102(d), Defendant's initial burden is to establish by competent medical evidence that Plaintiff did not sustain a "serious injury" within the meaning of § 5102(d).   *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 776-77 (2d Cir. 2010) (recognizing threshold issue on defendant's summary judgment motion on § 5102(d) serious injury claim is whether the plaintiff sustained a serious injury within the meaning of § 5102(d) (citing *Licari*, 441 N.E.2d at 1091)).   In contrast, to avoid summary judgment, Plaintiff must establish, by competent medical evidence, a genuine issue of material fact exists as to whether she sustained such an injury.   *See McHugh v. Marfoglia*, 885 N.Y.S.2d 550, 551 (4th Dep't 2009) (reversing lower court's denial of plaintiff's partial summary judgment motion on threshold issue of serious injury where plaintiff's objective medical evidence showed plaintiff suffered spine injury requiring surgery and resulting in permanent loss of ROM (citing *Toure v. Avis Rent A Car Sys.*, 774 N.E.2d 1197, 1201-02 (N.Y. 2002))).   In attempting to establish the plaintiff's injuries are not serious within the meaning of § 5102(d), a defendant can rely on "the affidavits or affirmations of medical experts who have examined the plaintiff and concluded that no objective medical findings support the plaintiff's claim."   *Grossman v. Wright*, 707 N.Y.S.2d 233, 237 (2d Dep't 2000).

Although generally, a physician's opinion is admissible as evidence only "when subscribed and affirmed by him to be true under penalties of perjury," N.Y. Civ. Prac. L. & R. 2106(a), the defendant may rely on unsworn medical records provided by the plaintiff to the defendant, although in doing so, the defendant opens the door for the plaintiff to also rely upon the same, unsworn records in opposing summary judgment. *Kearse v. New York City Transit Authority*, 789 N.Y.S.2d 281, 283-84 & n. 1 (2d Dep't

12

2005) (citing cases).   *See also Yong Qin Luo*, 625 F.3d at 777 (in establishing its *prima facie* case, a defendant may rely upon the plaintiff's unsworn treatment records, but to rebut the defendant's showing, the plaintiff must provide affidavits, affirmations or other sworn statements).   Upon establishing such a *prima facie* case, the burden shifts to the opposing party to point to evidence showing a genuine issue of material fact on this issue.   *Licari*, 441 N.E.2d at 1091.   Furthermore, the "[p]laintiff must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury."   *Yong Qin Luo*, 625 F.3d at 777.

  In the instant case, Plaintiff alleges numerous physical problems with the cervical, thoracic, lumbar, and sacrum sections of her spine as well as migraine headaches, CRPS of the lower limbs, piriformis syndrome, adjustment disorder with mixed anxiety and depressed mood, agoraphobia with panic disorder, and PTSD resulting in permanent or "significant limitation of use of a body organ, member, function or system" as required under § 5102(d).   Both a "consequential limitation" and a "significant limitation" are similarly construed as more than a "'minor, mild or slight limitation of use.'" *Gaddy v. Eyler*, 591 N.E.2d 1176, 1177 (N.Y. 1992) (quoting *Licari*, 441 N.E.2d at 1091, and citing *Scheer v. Koubek*, 512 N.E.2d 309, 309 (N.Y. 1987)). A review of Plaintiff's medical records establishes they fall short of demonstrating a material issue of fact as to whether Plaintiff sustained a "serious injury" under the "permanent" category, but not under the "significant limitation" category.

### 1. Permanent Consequential Limitation of Use

  Establishing an injury qualifies as a "permanent consequential limitation of use of a body organ or member" requires that "[s]ome degree of permanency and causation

must be demonstrated."   *Dwyer v. Tracey*, 480 N.Y.S.2d 781, 783 (3d Dep't 1984); *see Altman v. Gassman*, 608 N.Y.S.2d 651, 651 (1st Dep't 1994) ("A permanent consequential limitation requires a greater degree of proof than a 'significant limitation', as only the former requires proof of permanency.").   Furthermore, the claim must be based on objective medical evidence.   *See Gaddy*, 591 N.E.2d at 1178 ("Although there is evidence of plaintiff's subjective pain, there is no evidence supporting plaintiff's claim of permanency," and affidavit of the plaintiff's treating physician that the plaintiff's condition was of a permanent nature was based only on conclusory assertions and thus merely speculative).

In the instant case, regardless of whether Plaintiff's injuries are serious, the only evidence in the record suggesting such injuries are of a permanent nature consists of an averment by Plaintiff's treating physician, Dr. Abialmouna, concluding "with a reasonable degree of medical certainty that [Plaintiff's] diagnosis of CRPS in her left lower extremity is causally related to the April 9, 2016 motor vehicle accident. . . . [and] constitutes as a permanent and significant limitation on [Plaintiff's] ability to perform her usual tasks and activities of daily living."   Dr. Abialmouna Declaration ¶ 49.   Despite referencing numerous medical reports in his declaration, however, Dr. Abialmouna does not reference a single medical report that supports his averment as to the permanency of Plaintiff's asserted serious injuries, and the court's review of the medical records found none.

Accordingly, Plaintiff cannot meet her burden to avoid summary judgment insofar as she alleges a serious injury based on a "permanent, consequential limitation of use

of a body organ or member," N.Y. Ins. Law § 5102(d), and Defendant's Motion is GRANTED as to this aspect of Plaintiff's claim.

### 2. Significant Limitation of Use

For Plaintiff to establish a serious injury under this category and avoid summary judgment, Plaintiff must establish both that her injuries resulted in limited use of a body organ, member, function or system, as well as that such limitation is significant.   *Licari*, 441 N.E.2d at 1092-93.   Whether the limitation of use is significant "'involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part.'"   *Toure,* 774 N.E.2d at 1201.   A "minor, mild or slight" limitation does not constitute a serious injury.   *Licari,* 441 N.E.2d at 1091.   As used in § 5102(d), "significant" is "construed to mean something more than a minor limitation of use."   *Id*.   Specifically, "a minor, mild or slight limitation of use should be classified as insignificant within the meaning of [§ 5102(d) ]."   *Id.*   The "assessment of the 'significance' of a body limitation necessarily requires consideration not only of the extent or degree of the limitation, but of its duration as well."   *Partlow v. Meehan,* 548 N.Y.S.2d 239, 240 (2d Dep't 1989).

In support of summary judgment, Defendant relies on the statements of its expert witness, John J. Leddy, M.D. ("Dr. Leddy"), who examined Plaintiff on February 24, 2021 and reviewed Plaintiff's medical records.   Dr. Leddy's Opinion, Defendant's Exh. 33 (Dkt. 46-4 at 67-76).   In particular, Dr. Leddy opines that Plaintiff "did not sustain any acute injuries to her spine and legs as a result of the April 9, 2016 accident."   Dr. Leddy Opinion at 7-8.   According to "objective medical criteria, [Plaintiff] has no evidence of cervical or lumbar radiculopathy, neurological deficit, muscle spasm, or

muscle atrophy.   The objective medical evidence in this case shows that [Plaintiff] did not sustain any injury, and certainly not a serious injury, as a result of the 4/9/16 accident."   *Id*. at 8.   Dr. Leddy continues "there is no evidence that [Plaintiff] has a permanent, consequential, or significant limitation of use of her cervical or lumbar spines, or of her left leg, as a result of the 4/9/16 accident. . . .   [Plaintiff's] prognosis with respect to the 4/9/16 accident was and is good."   *Id*.

In opposing summary judgment on her claim of a significant limitation of use of a body organ, member, function or system, Plaintiff primarily relies on Dr. Abialmouna's averments that prior to the April 9, 2016 accident, Plaintiff complained of no injuries or difficulties with her lower extremities, worked full time as a nurse practitioner, and ambulated freely without use of any prescribed medical assistive device, *i.e.*, a cane. Plaintiff's Response at 8-9 (referencing Dr. Abialmouna's Declaration ¶¶ 16-19). After the accident, however, Plaintiff experienced pain and weakness, more prominently in her left lower extremity, *id*. at 9 (citing Dr. Abialmouna's Declaration, *passim*), with Plaintiff eventually being diagnosed with CRPS in her left lower extremity.   *Id*. (citing Dr. Abialmouna's Declaration ¶¶ 32, 45).   Despite seeing several pain specialists, receiving nerve blocks, injections, and spinal cords stimulation treatments, Plaintiff has not experienced optimal relief.   *Id*. (citing Dr. Abialmouna's Declaration ¶¶ 19, 35, 37, 45, 46, 48, 50).   Moreover, a November 11, 2016 MRI was "suspicious for minimal posterior bulge at the L5-S1 disc level" (Dkt. 50-1 at 27).   Plaintiff maintains she remains significantly limited because she is unable to put her full weight on her left leg and foot, cannot work, and has difficulty completing activities of daily living.   Plaintiff's Response at 9.

Accordingly, the record establishes there exists material issues of fact regarding whether Plaintiff incurred injuries posing a significant limitation to the use of a body organ, member, function or system.   The court, however, is not able on summary judgment to resolve disputed issues of material fact.   *See Anderson*, 477 U.S. at 255 (the district court is not permitted on summary judgment to make credibility determinations or weigh the evidence on the probable cause element or any other element, for these are "jury functions, not those of a judge"); *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) ("'The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'") (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

**B.      Causally Related**

Having found material issues of facts exist as to whether Plaintiff sustained a serious injury as defined under § 5102(d), the court considers Defendant's argument, Defendant's Memorandum at 13-14, that Plaintiff may not recover for non-economic losses for injuries not causally-related to the collision.   A review of the evidence in the record shows genuine issues of fact also exist as to whether Plaintiff's alleged injuries are causally related to the accident so as to survive summary judgment.

In addition to establishing an injury meeting the criteria of a serious injury as defined by § 5102(d), Plaintiff must also establish the injury was caused by the collision. Significantly, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury - such

as a gap in treatment, an intervening medical problem, or a preexisting condition - summary dismissal of the complaint may be appropriate." *Pommells*, 830 N.E.2d at 281.

As discussed above, Facts, *supra*, at 3-4, Plaintiff has a preexisting history of complaints of cervical and thoracic spinal pain attributed to her prior accident, for which medical resolution prior to the April 9, 2016 accident is not established.   There is also the further issue of whether Plaintiff's fall down the stairs at her home on September 29, 2017, following which Plaintiff was unable to return to work, is attributable to injuries sustained as a result of the April 9, 2016 accident, or an intervening cause separate from the April 9, 2016 accident.   Although Defendant maintains the record is devoid of any evidence Plaintiff complained of lower back and left buttock and leg pain until seven months after the accident, Defendant's Memorandum at 13-14; Defendant's Reply at 5 n. 1, the May 4, 2016 treatment notes of Dr. Abialmouna establish Plaintiff, who presented for evaluation relative to the accident, reported "difficulty walking due to spasms."   Dkt. 46-3 at 113.   At that time, Dr. Abialmouna assessed Plaintiff with, *inter alia*, "other spondylosis with myelopathy, thoracic region."   *Id*. at 115.   Plaintiff continued to complain of symptoms involving her lower back and left lower extremity. *See*, *e.g.*, Dkt. 46-4 at 12-13 (Dr. Abialmouna reporting on November 3, 2016 Plaintiff complained of increased pain in her neck and lower back); Dkt. 46-4 at 25-26 (Brighton Chiropractic treatment note dated June 13, 2017, reporting Plaintiff had "constant bilateral lumbar aching and dull pain" and "constant left SI [sacro-iliac] joint sharp pain," and assessed Plaintiff with decreased range of motion in the lumbar spine).   These medical records could permit a reasonable juror to conclude that, despite complaints of thoracic pain before the April 9, 2016 accident, the accident nevertheless exacerbated

18

the preexisting injury, and that Plaintiff suffered an injury to her lower back and left lower extremity which either caused or contributed to her falling down the stairs on September 29, 2017, which caused Plaintiff to be unable to return to her job.

Both are issues of fact precluding summary judgment on the issue of causation.

### C.    Pecuniary Damages and Economic Losses

Defendant argues Plaintiff cannot recover pecuniary damages because such damages can only be recovered for at least $ 50,000 in basic economic losses, *i.e.*, wages, attributable to disability from work, but that Plaintiff's disability from work was caused by her CRPS, which resulted from her September 29, 2017 fall and, thus, not the April 9, 2016 accident.   Defendant's Memorandum at 14-15.   In opposition, Plaintiff argues that insofar as she has not been able to return to work since November 6, 2017, and has not been able to collect her nurse practitioner's annual salary which was then $ 120,000, Plaintiff has realized lost wages well in excess of $ 50,000, Plaintiff's Response at 11-12, and the same issues that preclude summary judgment on the issue of causation also preclude summary judgment on the issue of damages.   *Id*. at 12-13. In further support of summary judgment, Defendant argues Plaintiff has failed to provide any admissible evidence showing Plaintiff has suffered economic losses exceeding $ 50,000.   Defendant's Reply at 8.

To recover under New York's No-Fault Law, Plaintiff must establish she incurred more than $ 50,000 in damages from medical expenses, lost wages, and other reasonable and necessary expenses attributed to her claimed injuries.   N.Y. Ins. Law § 5102(a); *Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000).   In the instant case, Defendant's interrogatory No. 4 inquired as to Plaintiff's occupation and

salary at the time of the April 9, 2016 accident.   Defendant's Exh. 6 (Dkt. 46-2 at

71-94).   Plaintiff responded that she was employed as a nurse practitioner with

Advance Pain & Wellness Institute, with an annual salary of $ 120,000.   *Id*.   Not only

did Defendant not request Plaintiff support her interrogatory answer with documentation

such as a pay stub, but an answer to an interrogatory is admissible evidence for

purposes of summary judgment.   *See Zachman v. Hudson Valley Fed. Credit Union*, __

F.4th __; 2022 WL 4229375, at *4 (2d Cir. Sept. 14, 2022) (in considering motion for

summary judgment, court may consider all relevant and admissible evidence submitted

by the parties including, *inter alia*, answers to interrogatories (quoting *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).   Further, the same issues precluding

summary judgment based on causation preclude summary judgment on the issue of

whether Plaintiff's lost wages are attributable to the April 9, 2016 accident.

Accordingly, this aspect of Defendant's Motion for summary judgment is

DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion seeking summary judgment (Dkt.

46) is GRANTED in part and DENIED in part.   The parties should contact the court to

schedule trial.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 23rd, 2022
                  Buffalo, New York